IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **ANTONIO VERNELL PORTER**, <br><br> Defendant. | Case No. 3:12-cr-643-SI <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

On October 8, 2014, Defendant Antonio Vernell Porter pleaded guilty to one count of sex trafficking of a minor, in violation of federal law. On April 20, 2015, the Court sentenced Mr. Porter to a term of imprisonment of 144 months, followed by ten years of supervised release. Mr. Porter is currently serving his sentence at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"). Mr. Porter has served approximately 73 percent of his sentence, and the Bureau of Prisons ("BOP") has scheduled Mr. Porter for release on March 26, 2023. On April 23, 2020, Mr. Porter submitted a request for reduction in sentence to the warden at FCI Sheridan. On July 7, 2020, Mr. Porter filed with the Court a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 96. The Government opposes Mr. Porter's motion. For the reasons that follow, the Court denies Mr. Porter's motion to reduce sentence.

PAGE 1 – OPINION AND ORDER

## LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE

### A.  Modifying a Term of Imprisonment for Compassionate Release

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010). Congress, however, has expressly authorized a district court to modify a defendant's sentence in three limited circumstances: (1) when granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A); (2) when expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; or (3) when a defendant has been sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(1). The motion before the Court seeks compassionate release.

Before 2018, § 3582(c)(1)(A) required that a motion for compassionate release could be brought only by the BOP. The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), amended § 3582 to authorize courts to grant a motion for compassionate release filed by a defendant. A defendant, however, may only bring a motion for compassionate release *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) the defendant has exhausted all administrative appeals after the BOP denied the defendant's petition or (b) thirty days has elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).[1]

Compassionate release under § 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds that two conditions have been satisfied. The first is that

---

[1] On June 2, 2020, the United States Court of Appeals for the Sixth Circuit held that a defendant's failure to satisfy this administrative exhaustion requirement does not deprive a court of subject-matter jurisdiction; instead, this is a mandatory claim-processing rule that binds a court when properly asserted by the Government and not forfeited. *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). The Ninth Circuit has not yet addressed this issue.

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The second is that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court also must *consider* the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id*.

**B. Extraordinary and Compelling Reasons**

The Sentencing Commission policy statement for reducing a term of imprisonment under § 3582(c)(1)(A) is found in the United States Sentencing Guidelines Manual ("USSG") at § 1B1.13. That policy statement explains the phrase "extraordinary and compelling reasons." USSG § 1B1.13(1)(A) and cmt. 1. According to the policy statement, extraordinary and compelling reasons are: (1) the medical condition of the defendant (defined as whether the defendant is suffering from a terminal illness; or is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); (2) the age of the defendant (defined as whether the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less); (3) family circumstances (defined as the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner); and (4) any other extraordinary and compelling reason determined by the Director of the BOP. USSG § 1B1.13 cmt. 1.

We are in a global health crisis caused by the 2019 novel Coronavirus ("COVID-19"), which already has taken the lives of more than 140,000 people just in the United States during

PAGE 3 – OPINION AND ORDER

the past several months. When a defendant has a chronic medical condition that may substantially elevate the defendant's risk of becoming seriously ill or dying from COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. Under these circumstances, a chronic medical condition (*i.e.*, one from which a defendant is not expected to recover) reasonably may be found to be both serious and capable of substantially diminishing the ability of the defendant to provide self-care within the environment of a correctional facility, even if that condition would not have constituted an extraordinary and compelling reason absent the heightened risk of COVID-19. *See generally* USSG § 1B1.13 and cmt. 1(A)(ii)(I).

Alternatively, USSG § 1B1.13 does not constrain the Court's ability to find extraordinary and compelling reasons. Because the Sentencing Commission's policy statement was not amended after enactment of the First Step Act, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" . . . "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citing *Brown v. United States*, 411 F. Supp. 3d 447, 499 (canvassing district court decisions)) (quotation marked omitted); *see also United States v. Barber*, 2020 WL 2404679, at *3 (D. Or. May 12, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.") (citations and quotation marks omitted).

As explained by one court, "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and [28 U.S.C.] § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release

motion properly before it." *United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020). Indeed, the Government previously conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). The court in *Young* followed many other district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Id*. The Court agrees with this alternative analysis as well.

## C. Safety of Other Persons and the Community

The policy statement further provides that, in addition to finding extraordinary and compelling reasons, a court also must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). The factors to be considered in deciding whether a defendant is a danger to the safety of any other person or to the community are: (1) the nature and circumstances of the offense (including whether the offense is a crime of violence, a violation of 18 U.S.C. § 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device); (2) the weight of the evidence; (3) the history and characteristics of the defendant (including, among other things, the defendant's character, physical and mental condition, and family ties and whether at the time of the offense or arrest the defendant was on probation, parole, or other release); and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

### D. Sentencing Factors Under § 3553(a)

Finally, as provided in both § 3582(c)(1)(A) and the policy statement, a court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a). The policy statement also recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . ., after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]" USSG § 1B1.13 cmt. 4.

## DISCUSSION

Mr. Porter, now age 33, is prediabetic, and his medical history includes a diagnosis of hepatitis B, a low white blood cell count, mild interstitial thickening from prior infection to his lungs, and a history of smoking tobacco. The CDC has stated that persons with diabetes, chronic lung conditions, and chronic liver disease may be at increased risk from COVID. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 25, 2020).

Mr. Porter has not shown that his medical conditions are not being treated at FCI Sheridan. Moreover, as of July 25, 2020, the BOP reports that only two inmates and no staff have tested positive for COVID-19 at FCI Sheridan. *See* https://www.bop.gov/coronavirus/ (last visited July 25, 2020).

While serving his sentence at FCI Sheridan, Mr. Porter has worked as an Orderly for the past three years. Before that, he worked in landscaping at FCI Fairton. While in custody, Mr. Porter has participated actively in programing and education. On December 11, 2019, he completed his GED while incarcerated. Mr. Porter also has taken the opportunity to further his rehabilitation through participation and completion of the WORKplus program, the Non-residential Drug Abuse Program, and other educational courses, including keyboarding, Black History Month, and Hispanic Heritage Seminar.

The Government opposes Mr. Porter's motion.  The Government argues that from at least 2009 until his arrest in 2012, Mr. Porter trafficked two minor girls. The Government adds that during this period, Mr. Porter threatened one victim multiple times. On one occasion, he hit her in the head with a toddler bike and cut her with a pocketknife. On another occasion, he hit her several times in the face when she refused to prostitute for him. This victim reported that anytime she refused to work, she would "get a beating." This victim engaged in multiple sexual encounters at Mr. Porter's direction and reported earning $200,000 while working as a prostitute for Mr. Porter. The other victim started prostituting for Mr. Porter in 2012, at age 15. Mr. Porter was actively involved in prostituting these two victims.

Compassionate release is "rare" and "extraordinary," and courts routinely deny such claims. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event.") (citation omitted). A defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release. *See United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that a defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135

F.3d 1301, 1306-07 (9th Cir. 1998)). As other district courts have noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (brackets in original) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)). The Court also must consider the sentencing factors under § 3553(a), to the extent they are applicable. *See* § 3582(c)(1)(A) and USSG § 1B1.13.

The Court has considered all the relevant factors for compassionate release. The Court concludes that Mr. Porter has not shown special circumstances that meet the high bar set by Congress and the Sentencing Commission for compassionate release.

## CONCLUSION

The Court DENIES Defendant's Motion to Reduce Sentence. ECF 96.

**IT IS SO ORDERED.**

DATED this 27th day of July, 2020.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge